UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

KEVIN JEROME JAMES #768012     CIVIL ACTION NO. 23-cv-509 SEC P

VERSUS     JUDGE EDWARDS

SHERIFF OF SABINE PARISH ET AL     MAGISTRATE JUDGE HORNSBY

## REPORT AND RECOMMENDATION

**Introduction**

Kevin Jerome James ("Plaintiff"), a self-represented inmate, complains that he received inadequate medical care while incarcerated at the Sabine Parish Detention Center. He originally named as defendants the sheriff, warden, and an assistant warden, but those defendants prevailed on motions to dismiss earlier in the case. The only remaining defendant is Nurse Melissa Vines, and the only claim against her is for damages based on 42 U.S.C. § 1983 for deliberate indifference to a serious medical need. Plaintiff's claims for declaratory and injunctive relief, state-law negligence, and medical malpractice have already been dismissed. Docs. 29 & 33.

Before the court is Nurse Vines' Motion for Summary Judgment (Doc. 58) that attacks the merits of the Section 1983 medical care claim. The motion was noticed for briefing, but Plaintiff has not filed any response. For the reasons that follow, it is recommended that Vines' motion be granted.

**Plaintiff's Allegations**

Plaintiff initiated this action by filing a short complaint. The court ordered Plaintiff to answer certain questions about the details of his claims, and he responded by filing an Amended Complaint (Doc. 12) that completely restated his allegations. Such a restated complaint supersedes the original complaint and renders it of no legal effect. Boelens v. Redman Homes, Inc., 759 F.2d 504, 508 (5th Cir. 1985); McDonald v. McClelland, 779 Fed. Appx. 222, 225 (5th Cir. 2019).

Plaintiff's amended complaint alleged that he was arrested in December 2020 and incarcerated at the Sabine Parish Detention Center. Amended Complaint, Doc. 12, ¶¶ 3 & 8. Before his arrest, Plaintiff "had undergone groin and hernia surgery and was still experiencing severe pain from the surgery and needed additional care." ¶ 9. Plaintiff requested medical care through a kiosk at the jail, and he was seen by Nurse Melissa Vines. She gave Plaintiff a muscle relaxer cream for the pulled muscle in his groin and Flexeril (a muscle relaxant) for his back pain. Plaintiff alleged that Vines "failed and refused to give plaintiff anything for his hernia." ¶¶ 10-11.

Plaintiff was on his way to get his breakfast meal tray when, while in severe pain from lack of treatment for his groin and hernia, he fell down some stairs. ¶ 12. The fall injured his ankle and vertebrae in his neck, and it "aggravated his groin injury." ¶ 13.

Plaintiff was taken to the Sabine Medical Center. His ankle was found to be broken, and two screws and a plate were implanted by surgery. Plaintiff's injuries for his groin and hernia "were never addressed even though [Plaintiff] urgently brought this to Defendant's attention as well as the surgical doctors at Sabine Medical Center." ¶ 14.

Plaintiff "reached out multiple times for medical assistance for help for his groin and hernia condition, but to no avail and simply had to consistently endure further pain and discomfort without any form of relief from/through medical care from Defendants." Plaintiff had been transferred to the David Wade Correctional Center by the time he filed his complaint in April 2023. He alleged that, after the transfer, he continued to suffer from severe pain in his groin area that made it difficult to walk or sit properly. ¶ 14.

**Summary Judgment**

Plaintiff's allegations were outlined above, but he may no longer rely solely on his allegations because they have been squarely challenged by a properly supported motion for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

Vines, as the party seeking summary judgment, has the initial responsibility of informing the court of the basis for her motion and identifying those parts of the record that she believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If Vines carries her initial burden, the burden then falls upon Plaintiff to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**The Constitution and Inmate Medical Care**

Plaintiff was a pretrial detainee when he arrived at the Sabine Parish Detention Center in December 2020.  Nurse Vines reports that Plaintiff was convicted in March 2022, received a ten-year sentence, and remained at the detention center for some time after conviction and sentencing.  He was eventually transferred to the David Wade Correctional Center in early 2023.  The claims of a pretrial detainee arise from the 14th Amendment's due process protections, while the Eighth Amendment's ban on cruel and unusual punishment protects convicted prisoners.  The relevant legal standard is, however, the same with respect to a medical indifference claim.

For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Constitution, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs."  Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc).  Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind.  Estelle, 97 S.Ct. at 291-92.  Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs.  Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

**Summary Judgment Evidence**

Nurse Vines supports her motion with her affidavit testimony.  Vines begins by noting her education and background, which includes being licensed as a registered nurse.  She has worked at Toledo Health, LLC since September 2019 as a family nurse

practitioner. Toledo Health contracted with the Sabine Parish sheriff to provide medical service to inmates at the detention center, and Vines was one of the nurses who provided that care to Plaintiff.

Nurse Vines notes that Plaintiff has multiple health problems, including hypertension, diabetes, gastroparesis or chronic pancreatitis, and pain. She first saw him in January 2021 after he got into a fight and was struck on the head with a plastic chair. She saw and treated Plaintiff more than 20 times between then and February 2023. She treated him for problems including diabetes, complaints of "burning all over" and elevated blood sugar, dental complaints, neck and groin pain after a fall down some stairs, rashes, trouble sleeping, painful urination, cellulitis, nausea, back pain, and foot issues.

Nurse Vines testifies that she responded to each of those complaints by prescribing or ordering refills of medications such as antibiotics, Tylenol, antifungal cream, hydroxyzine (for sleep), methocarbamol (a skeletal muscle relaxant), Voltaren gel (for groin pain), Pyridium (for painful urination), Gabapentin (used to treat nerve pain), Baclofen (for muscle spasticity), Flomax (for urinary condition), Flexeril (muscle relaxant), Salonpas pain patches, Creon (pancreatic enzyme replacement therapy), and the like. Nurse Vines referred Plaintiff to a dentist, ordered outpatient x-rays to assess neck and back pain, and followed up on previous matters as needed. Based on Plaintiff's X-rays, Vines diagnosed him with degenerative disc disease and degenerative joint disease. She also saw Plaintiff to follow up on a testicular ultrasound, the results of which were negative. Other healthcare providers also treated Plaintiff during his incarceration.

Plaintiff was transferred out of the Sabine Parish Detention Center in late February 2023. He was evaluated at Ochsner LSU in September 2023. Ochsner records show that Plaintiff had a history of abdominal surgeries that included two lumbar surgeries and two abdominal hernia surgeries prior to the relevant time. There was, however, no evidence of a current hernia. Nurse Vines testifies in her affidavit that, regarding Plaintiff's groin pain, an ultrasound was appropriately ordered and noted to be negative. His abdominal hernia area was monitored, and at all times was noted to be soft and easily reducible. He was appropriately prescribed Diclofenac gel and oral medications for his muscle strain and pain. His generalized pain was also appropriately treated with multiple medications, creams, patches, and gels.

Nurse Vines also submits an affidavit from Luanne Trahant, a registered nurse and a Certified Legal Nurse Consultant who reports that she has been qualified by numerous courts as an expert in nursing. Nurse Trahant testifies that she has reviewed the medical records from the detention center, the state prison, and Ochsner LSU, and it is her opinion that Nurse Vines acted reasonably and within the standard of care. She notes that Plaintiff received comprehensive and extensive diagnostic testing at Ochsner LSU, including ultrasounds, CT scans, MRIs, endoscopies, and evaluations by multiple specialties that included general surgery, gastroenterology, pain management, and urology. Despite all of that testing, there were no acute issues, illnesses, or injuries that required surgical treatment. There were also no issues that required anything more than the ongoing medical treatment that Plaintiff already received for his chronic medical conditions. Nurse Trahant

testifies that the "medical records clearly demonstrate that Kevin James did not have a hernia."

Nurse Vines also submits excerpts from Plaintiff's deposition. He testified that the Diclofenac gel that Nurse Vines gave him worked to address his groin pain. Defense counsel noted that Plaintiff had testified at length about how Nurse Vines had taken care of Plaintiff while he was at the detention center, so counsel was "a little confused over your suit." Plaintiff responded, "It wasn't against Melissa." Counsel explained that Nurse Melissa Vines was named in the complaint, and Plaintiff said that another inmate typed the complaint for him. He answered yes to counsel's question if he was "agreeable to dismissing her," and said that he "wasn't pressing charges on Melissa." Counsel asked if "she didn't do anything wrong," and Plaintiff responded, "No, she didn't." Plaintiff said that his "case is against Sabine Detention Center" rather than Nurse Vines. He agreed that he did not have any medical evidence to support the allegations in the complaint against Nurse Vines, and he agreed with counsel's statement that "she did everything right, correct?" He also agreed to dismiss Nurse Vines from the case, but that apparently did not happen.

**Analysis**

Plaintiff, to prevail on his claim against Nurse Vines, must show that she was deliberately indifferent to his serious medical need. Neither unsuccessful medical treatment, mere acts of negligence, nor medical malpractice give rise to deliberate indifference. Gobert v. Caldwell, 463 F.3d 339, 346 (5th Cir. 2006). "Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of

deliberate indifference.". Gobert, 463 F.3d at 346 n. 24, quoting Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

Nurse Vines has presented competent summary judgment evidence to show that there is no genuine dispute as to any material fact, and she is entitled to judgment as a matter of law. She has produced voluminous evidence that shows that she gave frequent and appropriate care for all of Plaintiff's many complaints. Plaintiff's main allegations in his complaint were that he was not appropriately treated for groin pain and a hernia. His own testimony reflects that Nurse Vines provided him a pain-relieving gel that addressed the groin pain, and other healthcare providers determined that Plaintiff did not then have a hernia.

Nurse Vines' presentation satisfied her initial burden under the summary judgment requirements. The burden then fell to Plaintiff to demonstrate the existence of a genuine dispute of a material fact. Plaintiff did not produce any evidence in response to the motion, and his own testimony undermines his claim.

Plaintiff's original complaint did include a declaration under penalty of perjury that all facts represented in it were true and correct. A verified complaint can be considered summary judgment evidence, but Plaintiff later filed an amended and restated complaint that superseded the original complaint. It did not include a verification. That is important because a superseded complaint, even if verified, does not constitute competent summary judgment evidence. McDonald, 779 Fed. Appx. at 225; King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994). Plaintiff did not shoulder his summary judgment burden.

**Conclusion**

Nurse Vines has made an overwhelming showing that she is entitled to summary judgment with respect to the only claim left in this case, the Section 1983 damages claim against her for deliberate indifference to a serious medical need. All other claims were resolved by prior motion practice. If this recommendation is adopted, all claims against all defendants will have been resolved, and it will be appropriate to enter final judgment and close this case.

Accordingly,

It is recommended that Melissa Vines' Motion for Summary Judgment (Doc. 58) be granted and that all remaining claims against Melissa Vines be dismissed with prejudice.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 18th day of October, 2025.

Mark L. Hornsby
U.S. Magistrate Judge